1

2

3

4                         **UNITED STATES DISTRICT COURT**
                                **DISTRICT OF NEVADA**
5

6

7  SANDRA RADA,                          )        2:11-cv-00652-ECR-GWF
                                         )
8        Plaintiff,                      )
                                         )
9  vs.                                   )        <u>Order</u>
                                         )
10 COX ENTERPRISES, INC., a Georgia      )
   Corporation, as Plan Administrator    )
11 of the Cox Enterprises, Inc.          )
   Welfare Benefits Plan; AETNA LIFE     )
12 INSURANCE COMPANY, as Claims          )
   Administrator of the Cox              )
13 Enterprises, Inc. Welfare Benefits    )
   Plan; DOES I through V; and ROE       )
14 CORPORATIONS I through V              )
                                         )
15       Defendant.                      )
                                         )
16 _____)

17

18       Now pending are a Motion for Judgment on the Pleadings and

   Administrative Record (#20) and a Counter-Motion for Judgment on the
19
   Pleadings and Administrative Record (#21) arising out of a complaint
20
   regarding the wrongful termination of disability benefits under an
21
   employer-provided Long Term Disability Plan.
22
         The motions are ripe, and we now rule on them.
23

24
                   **I. Factual and Procedural Background**
25
         Plaintiff Sandra Rada ("Plaintiff"), a Clark County, Nevada
26
   resident, was employed by Defendant Cox Enterprises, Inc. ("Cox")
27
   beginning January 1, 2005.  (Compl. ¶¶ 4-5 (#1).)  For the relevant
28

time period, Defendant Aetna Life Insurance Company ("Aetna") was Cox's agent and the designated Claims Administrator of Cox's Long-Term Disability Plan for its employees, providing administrative services under the plan as outlined in the Administrative Services Agreement between Aetna and Cox.  (Id. ¶ 6.)  Cox fully insured the plan, but Aetna handled claims and made the ultimate decision of whether to accept, deny, or terminate long-term disability claims.  (Id.)

On March 13, 2008, Plaintiff suffered a motor vehicle accident leaving her with head trauma, scalp laceration requiring 30 sutures, multiple contusions, and sprain/strain injuries to her neck and back.  (Id. ¶ 8.)  Plaintiff continues to experience post-concussive symptoms including depression, anxiety, headaches, memory loss, difficulty concentrating, word-finding problems, sleep disturbance, confusion, and fatigue.  (Id.)

As of March 13, 2008, Plaintiff was employed 40 hours a week as a Customer Service Representative at Cox, with duties including handling incoming calls, introducing and selling new products and services, handling customer problems and queries and providing responses, initiating billing adjustments, and other clerical and administrative tasks.  (Id. ¶ 9.)

Due to her accident, Plaintiff was unable to return to work. She applied for and received short term disability benefits for six months from her short term disability insurance carrier, UNUM.  (Id. ¶ 11.)  In August, 2008, Plaintiff applied for long-term disability benefits under Cox's Long Term Disability Plan.  (Id. ¶ 12.)  Under Cox's plan, an employee is eligible for benefits in the first 24

2

months of total disability if "[they] are not able, solely because of injury or disease, to work at [their] own occupation." (Id. ¶ 10.)  After the first 24 months, an employee is eligible for benefits if "[they] are not able, solely because of injury or disease, to work at any reasonable occupation." (Id.)  "Any reasonable occupation" is further defined under the plan as "any gainful activity for which [an employee is], or may reasonably become, fitted by education, training, or experience.  It does not include work under an approved rehabilitation program." (Id.) Aetna accepted Plaintiff's claim and paid Plaintiff's long-term disability benefits from September 14, 2008 through April 9, 2010. (Id.)

     On January 22, 2010, through Aetna's referral to its vendor Allsup, Plaintiff was awarded Social Security Disability benefits from the Social Security Administration ("SSA"). (Id. ¶ 13.)  The SSA deemed Plaintiff disabled as of December 6, 2009, and Plaintiff continues to receive Social Security benefits. (Id. ¶ 13.)

     On December 12th, 2009, Dr. Cruz, Plaintiff's primary physician, completed an Attending Physician's Statement as requested by Aetna, with a primary diagnosis of traumatic brain injury with complications of cognitive and physical impairment.  (Id. ¶ 14.) Plaintiff was seen by neurologist Daniel J. Broeske, MD, on January 5, 2010, where he stated that Plaintiff exhibited symptoms of "short-term memory impairment, distractibility, and inattention "partially borne out by objective testing today." (Id. ¶ 15.)  On January 7, 2010, at Aetna's request, Plaintiff filled out an Activities of Daily Living form, describing symptoms of memory loss,

1 difficulty understanding directions, sleep disturbances, headache,
2 lightheadedness, burning and tingling into her right arm, back, and
3 legs, word finding difficulty, right arm pain, and right leg pain
4 increased on prolonged standing.  She noted that she did not feel
5 she could return to work due to her head injury and understanding
6 difficulties.  (Id. ¶ 16.)

7    On February 25, 2010, Aetna referred Plaintiff's claim for peer
8 review by an occupational medicine specialist.  (Id. ¶ 17.)  The
9 specialist stated that the medical documentation did not indicate a
10 functional impairment from any occupation.  (Id.)  Aetna forwarded
11 the review to Dr. Cruz for his opinion on the matter, stating that
12 if he failed to respond within 15 days, his failure to respond would
13 be taken as a confirmation of the peer reviewer's analysis.  (Id.)
14 Dr. Cruz did not respond within 15 days but did respond on April 22,
15 2010.  (Id.)

16    After 24 months had passed, shifting Plaintiff's occupational
17 analysis under the Long Term Disability Plan from "her occupation"
18 to "any occupation," Aetna concluded on April 8, 2010 that Plaintiff
19 would be eligible for several different occupations based on her
20 training and education and the findings of its peer reviewer that
21 she could work at a sedentary job.  (Id. 18.)  The occupations
22 listed included Customer Service Representative, Circulation Clerk,
23 Dispatcher, and Credit Card Clerk.  (Id.)  In a letter to Plaintiff
24 dated April 14, 2010, Aetna terminated Plaintiff's long-term
25 disability benefits effective April 9, 2010 for the foregoing
26 reasons along with Dr. Cruz's failure to respond to the peer
27 reviewer's letter.  (Id. ¶ 19.)  In the letter, Aetna informed

28

4

1  Plaintiff that she could appeal Aetna's decision if she prepared a

2  narrative report outlining the extent of her disability.  (Id. ¶

3  20.).

4       Plaintiff submitted her appeal letter to Aetna on January 10,

5  2011 through her attorney.  (Id. ¶ 21.)  Her letter included updated

6  medical records from several of her doctors including Dr. Cruz,

7  additional records from Drs. Dylan Wint, MD, and Thomas Kinsora,

8  Ph.D, the pertinent parts of which are discussed in subsequent

9  sections.  (Id. ¶ 21.)  The appeal letter also included the

10 disability benefits award letter from the SSA.  (Id.)

11      In a February 21, 2011 letter, Aetna "partially overturned" its

12 April 14, 2010 decision, re-extending Plaintiff's benefits from

13 April 9, 2010 through November 30, 2010.  (Id. ¶ 24.)  Aetna refused

14 to extend benefits beyond November 30, 2010, stating that "the

15 records presented for review do not provide any abnormal examination

16 findings, imaging studies, or behavioral observations, dated after

17 11/30/10, to document any specific impairment that would prevent

18 [Plaintiff] from performing the work of any occupation."  (Id.)  The

19 denial was based on new physical examinations, doctors' reports, and

20 peer-to-peer conversations, further discussed in subsequent

21 sections.  (Id. ¶ 25.)

22      On March 7, 2011, Plaintiff's attorney wrote a letter to Aetna

23 inquiring whether Aetna had received confirmation that the comments

24 attributed to Plaintiff's doctors in peer-to-peer conversations were

25 accurate and urging Aetna to obtain Plaintiff's Social Security

26 benefits documents.  (Id. ¶ 28.)  On March 9, 2011, Dr. Wint wrote a

27 letter to Aetna clarifying his comments made during peer-to-peer

28                              5

conversation, discussed further in subsequent sections.  (Id. ¶ 30.)
On March 18, 2011, Aetna wrote a letter to Plaintiff's attorney
refusing to reconsider its denial of benefits.  (Id. ¶ 31.)

On April 26, 2011, Plaintiff filed her Complaint (#1) with this
court, seeking relief for wrongful termination of her disability
benefits under 29 U.S.C. § 1132(a)(1)(B).  On May 31, 2011,
Defendants Cox and Aetna filed their Answer (#7).  On June 16, 2011,
this court issued an Order (#11) demanding that Defendants produce
the administrative record.  On September 15, 2011, Defendants
supplied the administrative record (#16).  On November 8, 2011,
Plaintiff filed a Rule 52 Motion for Judgment on the Pleadings and
Administrative Record (#20).  On December 8, 2011, Defendants filed
their Response and a Counter-Motion for Judgment on the Pleadings
and Administrative Record (#21).  On January 11, 2012, Plaintiff
filed a Reply (#22) to Defendants' Response and Counter-Motion.  On
February 7, 2012, Defendants filed a Reply (#23) in support of their
Counter-Motion.


**II. Judgment on the Pleadings and Administrative Record Standard**

A party may move for judgment on the pleadings and
administrative record pursuant to Federal Rule of Civil Procedure
52.  "Although Rule 43(a) requires that 'testimony' be taken in open
court, the record should be regarded as being in the nature of
exhibits, in the nature of documents, which are routinely a basis
for findings of fact even though no one reads them out loud."
Kearney v. Standard Ins. Co., 175 F.3d 1084, 1094 (9th Cir. 1999).
District courts are permitted to "try the case on the record that

1  the administrator had before it," a method that is "vastly less
2  expensive to all parties." Id. at 1095.

3      In a bench trial on the record, "the judge will have to make
4  findings of fact under Federal Rule of Civil Procedure 52(a)." Id.
5  Under Federal Rule of Civil Procedure 52 (a)(1), "in an action tried
6  on the facts without a jury or with an advisory jury, the court must
7  find the facts specially and state its conclusions of law
8  separately."  This standard amounts to findings of fact in
9  "narrative form, i.e., which appear in a 'memorandum of decision
10 filed by the court.'"  In re Girardi, 611 F.3d 1027, 1040 n.3 (9th
11 Cir. 2010).

12     Findings of fact are reviewed for "clear error" and not set
13 aside "unless clearly erroneous." Edgmon v. United States, 449 Fed
14 Appx. 576, 577 (9th Cir. 2011); Fed. R. Civ. P. 52(a)(6).  A finding
15 of fact is clearly erroneous if the district court is "left with a
16 definite and firm conviction that a mistake has been made." Beech
17 Aircraft Corp. v United States, 51 F.3d 834, 838 (9th Cir. 1995).

18
19                        **III. Discussion**
20           A. Standard of Review
21     Plaintiff seeks relief under the Employee Retirement Income
22 Security Act for wrongful termination of her long-term disability
23 benefits.  29 U.S.C. § 1132(a)(1)(B).  Plaintiff maintains that
24 Aetna's termination of her claim should be reviewed de novo by this
25 court because the Long Term Disability Plan contains no reference to
26 the plan administrator retaining discretion to decide claims.
27 (Pl.'s Mot. J. Pleadings and Administrative R. at 2 (#20).)  Aetna

28                              7

contends that its termination should be reviewed under an abuse of discretion standard because of language in the Administrative Services Contract between Aetna and Cox conferring discretionary power upon Aetna.  (Defs.' Resp. at 2 (#21).)  When a plan does not confer discretionary power upon an entity, the standard of review is de novo.  <u>Abatie v. Alta Health & Life Ins. Co.</u>, 458 F.3d 955, 963 (9th Cir. 2006).  When the plan does grant discretionary authority upon an entity, the entity's action is reviewed under an abuse of discretion standard.  <u>Id.</u>

A document that is not "itself part of the plan" cannot confer discretionary power on an entity.  <u>CIGNA Corp. v. Amara</u>, 131 S. Ct. 1866, 1878 (2011).  Cases have upheld such additional documents only when they are integrated with the plan itself in some way.  <u>See, e.g.</u>, <u>Langlois v. Metropolitan Life Ins. Co.</u>, 833 F. Supp.2d 1182, 1185 (N.D. Cal. 2011) (recognizing other plan documents because they were included under a specific integration clause in the plan); <u>Lee v. Kaiser Foundation Health Plan Long Term Disability Plan</u>, 812 F. Supp.2d 1027, 1036 (N.D. Cal. 2011) (recognizing other plan documents because they were "within [the plan's] umbrella"); <u>Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey</u>, 663 F.3d 1124, 1131 (10th Cir. 2011) (finding that discretionary authority was conferred because the plan language indicated that the summary plan document "is the plan").  The Administrative Services Contract cited to by Aetna is not part of the plan, integrated or otherwise, and is not distributed to employees.  It does not confer discretionary authority on Aetna for reviewing Plaintiff's claims.

8

1    Aetna claims language in the plan itself is consistent with a
2    grant of discretionary authority to Aetna.  (Defs.' Resp. at 3
3    (#21).)  It points to language (1) requiring a claim to be submitted
4    to Aetna; (2) allowing Aetna to request proof from a claimant; (3)
5    giving Aetna the right to have a physician or dentist examine a
6    claimant; and (4) requiring Aetna to approve a program for
7    rehabilitation.  (Id.)  However, this language is too narrow to
8    constitute a broad grant of discretionary authority.  While there is
9    no "magic word" that creates discretionary authority, Abatie, 458
10   F.3d at 963, a small list of narrow areas in which an entity has
11   authority does not confer complete discretionary authority upon the
12   entity.  The plan language must "unambiguously provide discretion to
13   the plan administrator."  Feibusch v. Integrated Device Technology,
14   Inc. Employee Ben. Plan, 463 F.3d 880, 883 (9th Cir. 2006).  The
15   plan language cited to by Aetna does not unambiguously create
16   discretionary authority, and the standard of review adopted by this
17   court is therefore de novo.

18   Under a de novo standard of review, "[t]he court simply
19   proceeds to evaluate whether the plan administrator correctly or
20   incorrectly denied benefits, without reference to whether the
21   administrator operated under a conflict of interest."  Abatie, 458
22   F.3d at 963.  District courts are required under this standard to
23   "undertake an independent and thorough inspection of an
24   administrator's decision."  Silver v. Executive Car Leasing Long-
25   Term Disability Plan, 466 F.3d 727, 733 (9th Cir. 2006).  The burden
26   of proving wrongful termination of benefits is on the claimant.
27   Muniz v. Amec Const. Management, Inc., 623 F.3d 1290, 1294 (9th Cir.

28                                    9

1  2010).  Plaintiff must therefore satisfy her burden of proving that
2  her disability benefits under Aetna's Long Term Disability Plan were
3  wrongfully terminated.

4              B. Aetna's Review of Plaintiff's Medical Evidence

5       Plaintiff claims that Aetna failed to give proper weight to the
6  statements of three of her physicians, Drs. Wint, Kinsora, and Cruz,
7  regarding limitations on her ability to work.  (Pl.'s Mot. J.
8  Pleadings and Administrative R. at 7-10 (#20).)  Plan administrators
9  abuse their discretion when they focus only on "slivers" of the
10  record supporting their decisions and ignore other relevant parts of
11  the record.  Metropolitan Life Ins. Co. v. Conger, 474 F.3d 258, 265
12  (6th Cir. 2007).  Moreover, "[p]lan administrators . . . may not
13  arbitrarily refuse to credit a claimant's reliable evidence,
14  including the opinions of a treating physician."  Black & Decker
15  Disability Plan v. Nord, 538 U.S. 822, 834 (2003).  However,
16  administrators need not accord special weight to the statements of a
17  treating physician, nor are they barred from crediting reliable
18  evidence from sources that contradict the treating physician(s).
19  Id.

20       Plaintiff points to language from her neurologist, Dr. Wint, in
21  an itemized job restriction and limitation report.  (Pl.'s Mot. for
22  J. on the Pleadings and Administrative R. p. 7 (#20).)  In his
23  report, Dr. Wint indicates that Plaintiff could perform non-creative
24  sedentary tasks not "dependent on interpersonal interaction" for
25  "limited periods" and that a "slow introduction to the workplace"
26  was necessary.  (AETNA at 000989-000990 (#16).)  While Aetna does
27  not directly address this report in its letter terminating

28                                  10

1    Plaintiff's benefits, it extensively addresses Plaintiff's various
2    appointments with Dr. Wint, from a period where her psychological
3    symptoms were preventing her from functioning to her last visit with
4    Dr. Wint, where she showed marked improvement in her psychological
5    symptoms and showed no severe cognitive deficits in a
6    neuropsychological test ordered by Dr. Wint and performed by Dr.
7    Kinsora.  (Id. at 001093-001098.)  Moreover, the itemized report by
8    Dr. Wint does not conclusively indicate that she would be unable to
9    work at any reasonable occupation.  Dr. Wint lists several job
10   activities that would be appropriate for Plaintiff and indicates
11   that a "slow introduction to the workplace" would be appropriate.
12   (Id. at 000989-000990).

13        Dr. Wint's March 9, 2011 letter to Aetna clarifying statements
14   he made during a peer-to-peer conversation does not significantly
15   change the evidence.  In his letter of clarification, Dr. Wint
16   acknowledges that Plaintiff's cognitive abilities are only mildly
17   impaired but clarifies that her emotional capacity is extremely
18   impaired.  (Id. at 001079.)  Nevertheless, he still refrains from
19   precluding Plaintiff from gainful employment and instead argues for
20   "a slow re-introduction to work under special circumstances."  (Id.)
21   Indeed, the first two paragraphs of his letter are dedicated to what
22   types of work Plaintiff *would* be fit for, far from an outright
23   denial of her ability to work.

24        Plaintiff further argues that Aetna ignored evidence from Dr.
25   Kinsora that indicates that Plaintiff may not be able to return to
26   the workplace.  (Pl.'s Mot. J. Pleadings and Administrative R. at 8-
27   9 (#20).)  In particular, Plaintiff directs this court to language

28                                      11

1   from a neurocognitive assessment where Dr. Kinsora stated that "the

2   intensity of her depression, anxiety, and [MVA]-related PTSD

3   symptoms . . . suggests that it may be difficult for her to return

4   to work on a full-time basis." (AETNA at 001006 (#20).)  This

5   language, while urging caution regarding Plaintiff's return to the

6   workplace, does not definitively preclude Plaintiff from gainful

7   employment.  In the same report, Dr. Kinsora describes most of

8   Plaintiff's cognitive problems as "mild" and indicates that they

9   will "worsen with anxiety, and when she is in a noisy, or chaotic

10  environment." (Id.)  Plaintiff provides no evidence that her

11  occupational choices will be limited to noisy and anxiety-inducing

12  environments.  Additionally, as Aetna points out in its termination

13  letter, Plaintiff showed no cognitive deficits in her

14  neuropsychological examination by Dr. Kinsora.  (Id. at 001093-

15  001098.)  Finally, in the same report cited to by Plaintiff, Dr.

16  Kinsora states that Plaintiff "should be encouraged to remain as

17  socially and physically active as possible." (Id. at 001007.)

18      While Aetna did not cite in its termination letter some of the

19  passages that Plaintiff mentions, it did consider the results of Dr.

20  Kinsora's neuropsychological examination in general.  Id. at 001093-

21  001098.)  Moreover, the above statements by Dr. Kinsora about

22  Plaintiff's fitness for employment do not render Aetna's decision

23  unreasonable.  On the contrary, Dr. Kinsora's statements could be

24  interpreted as urging a cautious re-introduction of Plaintiff to the

25  workforce.

26      Plaintiff also cites an October 2010 statement by her primary

27  care physician, Rafael Cruz, where he states that "it is difficult

28                                    12

for me to understand how this patient can be deemed as functional, considering her accident, mentation, cognition in lieu of her job description." (Id. at 000976.)  However, Cruz deferentially adds that "if the [patient] is deemed functional, then a functional capacity [evaluation] should be obtained and any assistance necessary for her gainful employment should be provided." (Id.) These statements do not preclude Plaintiff from gainful employment, and, as they arise out of a routine physical examination by a general practitioner, they should be given less weight than the more specialized neurological examinations and evaluations provided by Drs. Kinsora and Wint.

While Aetna does not discuss every equivocation by each doctor in its termination letter, it provides a sufficiently thorough review of the relevant evidence.  Aetna acknowledges the ongoing emotional difficulties that may hinder Plaintiff in the workplace. (Id. at 001097) However, Aetna's review also reveals a neuropsychological examination indicating no cognitive deficits, a normal EEG, and statements by Drs. Wint and Kinsora that indicate Plaintiff would be fit for certain occupational settings.  (Id.) Aetna further conducted peer-to-peer conversations with Drs. Broeske and Owens, who confirmed that they had treated her but were unable to comment on her fitness for an occupational setting.  (Id.)  Aetna appears to have weighed the relevant evidence and come to a conclusion that is well supported by the administrative record. Aetna has not ignored any evidence that would unequivocally suggest that Plaintiff cannot work.

1       C. Aetna's Peer to Peer Conversations During Plaintiff's
2  Appeal

3       Plaintiff claims that Aetna failed to fulfill its obligation to
4  afford Plaintiff "a reasonable opportunity . . . for a full and fair
5  review," 29 U.S.C. § 1133, by obtaining peer-to-peer medical
6  conversations with Plaintiff's doctors during the appeal process
7  that Plaintiff and her doctors could not address before the final
8  denial.  (Pl.'s Mot. J. Pleadings and Administrative R. (#20).)
9  Plaintiff cites Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 689
10 (7th Cir. 1992), for the proposition that the administrator must
11 provide the claimant with all of the relevant evidence it relied
12 upon and give the claimant the opportunity to address the accuracy
13 and reliability of that evidence.

14      Plaintiff overstates the law.  A plan administrator is required
15 by regulation to disclose to the claimant all documents relevant to
16 the appeal.  29 C.F.R. § 2560.503-1(i)(5).  However, after a
17 claimant has submitted an appeal, an administrator can prepare
18 further documents relevant to Plaintiff's appeal and is only
19 required to disclose them upon request *after* it makes its final
20 determination.  Silver v. Executive Car Leasing Long-Term Disability
21 Plan, 466 F.3d 727, 731 n.2 (9th Cir. 2006); 29 C.F.R.
22 2560.503-1(h)(2)(iii).  To require administrators to allow claimants
23 to review every document it prepares on appeal before it makes its
24 final decision would "lead to an interminable back-and-forth between
25 the plan administrator and the claimant."  Silver, 466 F.3d at 731
26 n.2; see also Metzger v. Unum Life Ins. Co. of Am., 476 F.3d 1161,
27 1166-67 (10th Cir. 2007) (finding that allowing claimants to review

28                                    14

1  and rebut reports generated during the appeal process would lead to
2  an "unnecessary cycle of submission, review, re-submission, and
3  re-review"). Allowing such claimant review on appeal would also
4  "prolong the appeal process, which, under the regulations, should
5  normally be completed within 45 days." Metzger, 476 F.3d at 1166
6  (citing 29 C.F.R. § 2560.503-1(i)(3)(i)). As long as the claimant
7  has access to the documents generated on appeal at the district
8  court where she brings her claim, the claimant is deemed to have
9  "had ample opportunity to respond." Silver, 466 F.3d at 731 n.2.

10     Aetna was therefore justified in conducting peer-to-peer
11  conversations during Plaintiff's appeal and not disclosing
12  information from the conversations until it made its final
13  determination. Aetna provided in its termination letter the peer-
14  to-peer statements it relied upon in its decision. Plaintiff has
15  had ample opportunity to raise any objections her doctors may have
16  to Aetna's portrayal of their statements at the district court
17  level. The one clarification she provided, Dr. Wint's March 9th,
18  2011 letter (AETNA 001079 (#16)), does not significantly change the
19  evidence Aetna relied upon. See supra Part III.B. Plaintiff has
20  not requested any additional documents from Aetna regarding the
21  peer-to-peer conversations, nor has she disputed other statements
22  attributed to her doctors in Aetna's termination letter.

23     Plaintiff argues that she was not given a full and fair review
24  because comments attributed to her doctors were "provided by
25  unidentified individuals." (Mot. J. Pleadings and Administrative R.
26  at 7 (#20).) However, Plaintiff cites no legal authority requiring
27  conductors of peer-to-peer conversations to be specifically

28                                    15

1  identified, nor does there appear to be any.  See <u>Midgett v.</u>

2  <u>Washington Group Intern. Long Term Disability Plan</u>, 561 F.3d 887,

3  896 (8th Cir. 2009) ("we are aware of [no established law] requiring

4  peer reviews to be performed by examining physicians, requiring a

5  plan administrator to provide detailed credentials of peer

6  reviewers, or prohibiting peer reviews from appearing on a plan

7  administrator's form").  Moreover, because the evidence obtained by

8  Aetna from the peer conversations consists only of Plaintiffs'

9  doctors' statements and involves no independent judgment by the peer

10  reviewers, this court will not require further information about

11  Aetna's peers.  Nor will we question the validity of the statements

12  attributed to the doctors unless Plaintiff provides a compelling

13  reason to do so, which she has not.

14                 D. Aetna's Lack of Vocational Evidence

15       Plaintiff claims that Aetna failed to give her a full and fair

16  review by failing to provide vocational evidence regarding whether

17  Plaintiff would be fit for "any occupation" with the restrictions

18  provided by her doctors.  (Mot. J. Pleadings and Administrative R.

19  at 9 (#20).)  However, in cases where the "any occupation" standard

20  applies, "consideration of vocational evidence is unnecessary where

21  the evidence in the administrative record supports the conclusion

22  that the claimant does not have an impairment which would prevent

23  him from performing some identifiable job."  <u>McKenzie v. General</u>

24  <u>Telephone Co. of California</u>, 41 F.3d 1310, 1317 (9th Cir. 1994).

25  <u>See also</u> <u>Regula v. Delta Family-Care Disability Survivorship Plan</u>,

26  266 F.3d 1130, 1149 (9th Cir. 2001) (holding that because there "is

27  ample evidence in the record to support [the plan administrator's]

28                                16

1  conclusion that [Plaintiff] could perform some occupation," the plan
2  administrator is not required to provide specific vocational
3  evidence stating what jobs Plaintiff can perform).

4       Here, there is no evidence that unequivocally suggests that
5  Plaintiff is not fit for any job, and several of Plaintiff's doctors
6  provide guidelines for returning to a vocational setting.  Dr. Wint
7  indicates that Plaintiff's most debilitating impairments at this
8  point are emotional and can be managed with a slow-reintroduction to
9  the workforce.  (AETNA at 001079 (#16).)  Dr. Kinsora suggests that
10 it would be unadvisable for Plaintiff to work in a noisy or chaotic
11 environment, (AETNA at 001006 (#16).), but there is no reason to
12 assume that Plaintiff's choice of sedentary office jobs would be
13 restricted to noisy or chaotic ones.  Aetna had sufficient evidence
14 to determine that Plaintiff was fit for some form of "gainful
15 activity in which [she is], or may reasonably become, fitted by
16 education, training, or experience."

17                  E. Plaintiff's Social Security Award

18      Plaintiff argues that Aetna failed to give proper weight to
19 Plaintiff's Social Security benefits award.  (Mot. J. Pleadings and
20 Administrative R. at 10-11 (#20).)  However, the cases she points to
21 supporting the conclusion that a plan administrator conducted an
22 insufficient review by failing to adequately consider Social
23 Security benefits list such a failure as one among several factors
24 amounting to an insufficient review.  See, e.g., Montour v. Hartford
25 Life & Acc. Ins. Co., 588 F.3d 623, 637 (9th Cir. 2009) (finding
26 signs of bias, insufficiency in the surveillance of plaintiff's
27 activities, failure to ensure a neutral review process, and failure
28                                 17

to conduct a physical exam along with failure to consider plaintiff's award of Social Security benefits to amount to an abuse of discretion); Pierce v. American Waterworks Co., Inc., 683 F.Supp. 996, 1001 (W.D. Pa. 1988) (finding that the overall decision was "not supported by substantial evidence").  While a plan administrator's failure to review a social security decision is a factor in demonstrating an arbitrary or insufficient review, it "does not render the decision arbitrary *per se*."  Glenn v. MetLife, 461 F.3d 660, 669 (6th Cir. 2006).  Plaintiff has failed to establish that Aetna conducted an insufficient review in any other way, so it is not clear that Aetna's review would be insufficient even if it had failed to review the SSA's decision.

Additionally, Aetna points to several differences in how disability is assessed by the Social Security Administration and under the Long Term Disability Plan drafted by Cox.  (Defs.' Resp. at 15-16 (#21).)  The Social Security Act defines an individual as "disabled" if "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Comparatively, Cox's Long Term Disability plan defines an individual as disabled if "after the first 24 months of a period of total disability, [they] are not able solely because of injury or disease to work at any reasonable occupation," further clarifying that "reasonable occupation" means "any gainful activity for which you are, or may reasonably become, fitted by education, training, or experience." (AETNA at 000004 (#16).)

18

1    As Aetna points out, the Social Security definition of
2  "disabled" narrows the jobs a claimant is considered eligible for by
3  taking into account the claimant's age and restricting the job
4  market to the "national" economy.  The Social Security Act also
5  requires that a claimant be able to find "substantial" gainful
6  employment, while Cox's Long Term Disability Plan recognizes "any"
7  reasonable gainful employment, though Aetna does not explain what
8  difference this makes as a practical matter.  Also, unlike the SSA,
9  Aetna is not bound by the treating physician rule, which requires
10 the SSA to accord "special weight" to the opinions of a claimant's
11 treating physician.  <u>Black & Decker Disability Plan</u>, 538 U.S. at
12 831.

13   The most important difference between the Social Security
14 Administration's review and Aetna's review, however, is that Aetna
15 was reviewing Plaintiff's claim with more updated information.
16 Plaintiff was awarded her Social Security benefits in the fourth
17 quarter of 2009.  (AETNA at 001042.)  Aetna's determination
18 regarding Plaintiff's disability status was made nearly a year after
19 that, taking into consideration new medical records and doctor
20 testimony.  Much of the information that Aetna relied upon for its
21 latest decision would not have been available to the SSA at the time
22 they composed their January 22, 2010 letter.

23   In its termination letter, Aetna acknowledges the SSA's
24 decision but points out the differences in the records relied upon
25 and the entities' methodologies.  (<u>Id.</u> at 001097.)  Given the
26 foregoing analysis of the differences between the two entities'
27
28

methods and information, Aetna was justified in acknowledging the SSA's decision but refusing to treat it as dispositive.

### IV. Conclusion

Plaintiff has failed to show that Aetna did not give her a full and fair administrative review under its Long Term Disability Plan. Plaintiff's Motion for Judgment on the Pleadings and Administrative Record (#20) is denied, Aetna's termination of Plaintiff's benefits is upheld, and Defendants' Counter-Motion for Judgment on the Pleadings and Administrative Record (#21) is granted.

**IT IS, THEREFORE, HEREBY ORDERED** that Plaintiff's Motion for Judgment on the Pleadings and Administrative Record (#20) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Judgment on the Pleadings and Administrative Record (#21) is **GRANTED**.

The Clerk shall enter the judgment accordingly.

DATED: August 7, 2012.

_Edward C. Reed._
UNITED STATES DISTRICT JUDGE